UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JEFFREY GHEE,

       Petitioner,
v.                    9:23-CV-0505
                       (MAD)
BRIAN McAULIFFE, Superintendent of Riverview
Correctional Facility,

       Respondent.

---

APPEARANCES:             OF COUNSEL:

JEFFREY GHEE
Petitioner, pro se
19-A-0228
Wyoming Correctional Facility
P.O. Box 501
Attica, NY 14011

HON. LETITIA JAMES
Attorney for Respondents          DANIEL P. HUGHES, ESQ.
Attorney General of New York        Ass't Attorney General
28 Liberty Street
New York, New York 10005

MAE A. D'AGOSTINO
United States District Judge

**DECISION and ORDER**

I.  **INTRODUCTION**

  Petitioner Jeffrey Ghee seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1–1-2, Supporting Exhibits. Respondent opposed the petition and, per the Court's order, filed an opposition brief addressing only

1

the issue of timeliness.  Dkt. No. 12, Answer; Dkt. No. 12-1, Memorandum of Law in Opposition ("Resp."); Dkt. No. 12-2–12-4, Supporting Exhibits.[1]  Petitioner did not reply.

## II.  RELEVANT BACKGROUND

### A. Trial Court Proceedings

In April 2018, a Schenectady County Grand Jury charged petitioner with two counts of Criminal Sale of a Controlled Substance in the 3rd Degree and two counts of Criminal Possession of a Controlled Substance in the 3rd Degree.  Dkt. No. 12-2 at 20-22.  In June 2018, a subsequent Schenectady County Grand Jury issued a second indictment, charging petitioner with two additional counts of Criminal Sale of a Controlled Substance in the 3rd Degree and two additional counts of Criminal Possession of a Controlled Substance in the 3rd Degree.  *Id.* at 55-57.  The Supreme Court, Schenectady County, consolidated the two indictments on September 17, 2018.  *Id.* at 100-01.

On October 9, 2018, petitioner pled guilty to one count of Criminal Sale of a Controlled Substance in the 3rd Degree in satisfaction of all charges.  Dkt. No. 12-2 at 115-27.  In exchange for petitioner's guilty plea, the judge stated she planned to sentence petitioner to a 6.5-year term of imprisonment.  *Id.* at 119.  After being placed under oath, petitioner confirmed that he understood the terms of the plea offer, *id.* at 117-18, that the plea offer as recited constituted the entirety of the promises that the prosecutors and court made to him, *id.* at 120, and that he had no questions about the negotiated agreement, *id.* at 117.  Petitioner stated that he understood that by accepting the plea agreement he forfeited his right to remain silent, to a speedy and public trial, to

---

[1]  For the sake of clarity, citations to parties' submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system.

a presumption of innocence, and to call and confront witnesses. *Id.* at 118. Additionally, petitioner confirmed he understood that he voluntarily waived his right to appeal. *Id.* at 121. Petitioner also swore he had not consumed any drugs or medication prior to the hearing. *Id.* at 117-18. Based on petitioner's affirmations, the Court accepted petitioner's guilty plea. *Id.* at 122. In January 2019, in accordance with the plea deal, the court sentenced petitioner to a term of imprisonment of 6.5 years with 3 years of supervised release. *Id.* at 135-36.

### B. Direct Appeal

Despite waving his right to an appeal in connection with his plea deal, petitioner appealed his conviction to the New York Appellate Division, Third Department ("Third Department"). Dkt. No. 12-2 at 149. Petitioner challenged: (1) the scope of the trial court's written appellate waiver; and (2) the severity of his sentence. Dkt. No. 12-2 at 197-199. On May 7, 2021, the Appellate Division found the written appellate waiver overbroad and, therefore, found petitioner's "challenge to the perceived severity of the sentence imposed [to] not [be] precluded." *Id.* at 198. On the merits, the Third Division dismissed petitioner's appeal, noting that petitioner's sentence was a mere 6 months over the legal minimum. *Id.* at 198-99. The Court of Appeals denied petitioner leave to appeal on August 4, 2021. *Id.* at 200.

### C. Collateral Appeal

On July 9, 2019, while his direct appeal was still pending, petitioner filed a pro se motion to vacate judgment pursuant to New York Criminal Procedure Law § 440.30. Dkt. No. 12-3 at 1-10. Petitioner argued that the sentence imposed against him should be vacated on the following grounds: (1) ineffective assistance of counsel; (2) being

denied the right to appear before the April 2018 grand jury; (3) nonconforming signature by the grand jury foreperson; (4) invalid waiver appeal; and (5) being held beyond the maximum time allowed between his arraignment and indictment.  *Id.*  The trial court denied the motion, noting that a § 440 motion "is to inform a court of facts not reflected in the [initial proceeding's] record[,]" and that, instead, petitioner merely used his § 440 motion as "a vehicle for an additional appeal."  *Id.* at 49 (internal quotation marks omitted).

Petitioner timely sought leave to appeal the denial of his § 440 motion to the Third Department.  Dkt. No. 12-3 at 52-53.  On September 10, 2020, the Third Department denied leave, ending petitioner's collateral appeal.  *Id.* at 65.

### III.     PETITION

Petitioner challenges his 2018 judgment of conviction, entered by guilty plea, in the Supreme Court, Schenectady County.  Pet. at 1-13.  Specifically, petitioner argues he is entitled to federal habeas corpus relief because: (1) his trial counsel was constitutionally ineffective, Pet. at 5-6; (2) he was denied the right to appear before the April 2018 grand jury, *id.* at 7-8; (3) he was held beyond the date allowed under New York Criminal Procedure Law § 180.80 (McKinney 2020), *id.* at 8-9; (4) the grand jury true bills contained forged signatures, *id.* at 10-11; (5) the written appellate waiver was overbroad, *id.* at 16-17; and (6) there was no warrant for petitioner's arrest on file with the State. *Id.* at 18-19.  Petitioner seeks a new trial.  *Id.* at 15.

Respondent disagrees, arguing that the petition should be dismissed as untimely.[2]  Resp. at 7.

---

[2]  At the request of the Court, respondent limited its brief to the timeliness issue.

## IV.   ARGUMENT

### A. Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for prisoners to seek federal habeas corpus review of state criminal convictions.  28 U.S.C. § 2244(d)(1).  The one-year period begins on the latest of four dates specified by § 2244(d)(1), but, generally, and in the instant action, the limitations period begins on the date on which the state criminal conviction becomes final.[3]  A criminal conviction is "final" upon the end of the 90th day following the completion of the defendant's direct appeal in the respective state's highest court or, if the defendant files for a writ of certiorari within 90 days of the highest state court's decision, upon the completion of proceedings before the United States Supreme Court. *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 (2012); *Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001).

Here, the Court of Appeals denied petitioner's application for leave to appeal his conviction on August 4, 2021.  Dkt. No. 12-2 at 200.  Petitioner did not seek a writ of certiorari, and, as such, his conviction became final 90 days later – November 2, 2021.  Petitioner had one year from that date, or until November 2, 2022, to timely file his habeas petition.  Petitioner filed the instant action on April 24, 2023, nearly 6 months late.  Pet. at 15.  Accordingly, the Court concludes that, unless petitioner can

---

[3] "The limitations period may alternatively begin to run on the following dates: (1) where the petitioner was prevented from filing an application by state action, the date on which the impediment is removed; (2) where the right asserted is a newly recognized one made retroactively applicable, the date on which a constitutional right asserted was initially recognized by the Supreme Court; and (3) date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence." *Trimm v. Kirkpatrick*, 9:18-cv-287 (MAD/TWD), 2021 WL 981814, at * 4, n. 3 (N.D.N.Y. Mar. 16, 2021) (citing 28 U.S.C. § 2241(d)(1)(B-D)).

demonstrate the limitations period should be tolled, his petition is untimely and should be dismissed.

### B. Tolling

The petitioner contends that the petition is not untimely as he is entitled to a period of equitable tolling. Equitable tolling of the AEDPA limitations period applies only in "rare and exceptional" circumstances. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). A petitioner seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way [that] prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011). A "petitioner must 'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing[.]'" *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2201) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)). Further, allegations of extraordinary circumstances "must be supported with evidence and not merely with conclusory allegations." *Green v. Capri*, No. 9:17-CV-0392 (BKS), 2018 WL 2452623, at *4 (N.D.N.Y. May 31, 2018).

Petitioner argues he is entitled to equitable tolling because of: (1) his transfers between correctional facilities; (2) his placement in solitary confinement; (3) his lack of legal assistance; (4) poor legal counsel in trial court; and (5) COVID-19. Pet. at 13-19. The court addresses each of petitioner's arguments in turn.

### i. Solitary Confinement and Prison Transfers

Petitioner contends that his prison transfers and time in solitary confinement amount to extraordinary circumstances that merit the equitable tolling of AEDPA's limitations period. Pet. at 13.

Generally, "the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances." *Corrigan v. Barbery*, 371 F. Supp.2d 325, 330 (W.D.N.Y. 2005); *see also Green*, 2018 WL 2452623, at *5 (lockdowns and power outages for unspecified lengths did not constitute extraordinary circumstances for AEDPA equitable tolling purposes); *Simmons v. Brown*, No. 08-CV-1425, 2011 WL 2133844, at *8 (E.D.N.Y. May 26, 2011) (finding that routine restrictions on prison life do not constitute extraordinary circumstances for AEDPA equitable tolling purposes).

Here, petitioner provides no detail on how his prison transfers and solitary confinement amounted to extraordinary circumstances when compared with the routine restrictions inherent in prison life. Without more detail about the frequency of transfers or length in solitary confinement and how they impeded his ability to timely file the instant petition, such arguments amount to nothing more than unsupported conclusory allegations. *See Green*, 2018 WL 2452623, at *4 (finding that allegations of extraordinary circumstances "must be supported with evidence and not merely with conclusory allegations."). Consequently, the Court cannot find that such ordinary incidents are, in fact, extraordinary. As such, petitioner's prison transfers and solitary confinement cannot form the basis of equitable tolling.

### ii.  Lack of Legal Counsel

Petitioner argues that his lack of legal assistance in filing the instant petition entitles him to a period of equitable tolling.  Pet. at 13.

The Second Circuit has directly rejected petitioner's contention, ruling that "pro se status . . . does not merit equitable tolling."  *Smith*, 208 F.3d at 18; *see Box v Lilley*, No. 9:22-CV-1093 (DNH), 2023 WL 7385151, at *8 (N.D.N.Y. Nov. 8, 2023) ("[P]etitioner's pro se status is also insufficient to merit equitable tolling.") (quotation marks and citations omitted).  Thus, petitioner's contention fails on its face.  Petitioner's lack of legal assistance in filing his petition, on its own, does not warrant equitable tolling.[4]

### iii.  Poor Legal Assistance in Trial Court

Petitioner seems to next argue that his trial court attorney's "ineffective" counsel during his trial court proceedings and direct appeal constitute extraordinary circumstances that should excuse his petition's tardiness.  Pet. at 13-14.  However, petitioner provides no details or specific allegations about how his trial counsels' ineffectiveness caused him to file his habeas petition late.  Without evidentiary support, the Court cannot find petitioner's conclusory allegations to qualify as extraordinary circumstances.  *See Green*, 2018 WL 2452623, at *4 (finding that allegations of extraordinary circumstances "must be supported with evidence and not merely with conclusory allegations.").

---

[4] To the extent petitioner argues that his lack of knowledge about the law is an extraordinary circumstance, this argument fails as well.  *See Box*, 2023 WL 7385151, at *8 ("[L]ack of knowledge and education about the law and one's legal rights is not an extraordinary circumstance because [equitably] tolling for this common obstacle that most petitioners face would undermine the legislative decision to impose a one-year limitations period.").

Even if petitioner alleged that his trial counsel provided incorrect information about a filing deadline or committed another similar blunder that caused petitioner to miss his AEDPA filing deadline, such mistake "would not be a[n extraordinary circumstance]" that merits equitable tolling. *Romero v. Rich*, No. 1:22-CV-0686, 2022 WL 1568707, at *3 (E.D.N.Y. May 18, 2022); *see Holland*, 560 U.S. at 651-52 (2010) ("[A] garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline does not warrant equitable tolling.") (quotation marks and citations omitted). Without specific allegations, the Court refuses to find petitioner's allegedly ineffective trial counsel to be an extraordinary circumstance that could excuse the untimely petition.

### iv.   COVID-19

Lastly, petitioner claims that the COVID-19 pandemic and his subsequent stints in quarantine represented extraordinary circumstances that warrant equitable tolling. Pet. at 14.

Numerous district courts in the Second Circuit have found the COVID-19 pandemic to qualify as an extraordinary circumstance for equitable tolling purposes. *Mighty v. United States*, No. 6:15-CR-06109, 2021 WL 3036926, at *2 (W.D.N.Y. July 19, 2021) ("[T]he Court may be inclined to find that the circumstances of . . . the COVID-19 outbreak at FCI Elkton are 'extraordinary' and sufficient to equitably toll the limitations period[.]"); *Cottell v. Reardon*, 7:22-cv-1178, 2023 WL 3852384, at *4 (S.D.N.Y. Mar. 10, 2023) ("[T]here is no question that COVID constituted an extraordinary circumstance[.]"); *Maris v. Fields*, 1:20-CV-1451, 2021 WL 4311140, at * 2 (E.D.N.Y. Sept. 22, 2021) ("There is no question that the pandemic constituted an

extraordinary circumstance[.]"). This Court finds no reason to differ from its sister courts and agrees with petitioner that COVID-19 qualifies as an extraordinary circumstance.

However, to establish equitable tolling, a petitioner must demonstrate both extraordinary circumstances *and* that they diligently pursued their remedies despite the extraordinary circumstances. *Holland*, 560 U.S. at 418; *see also Maris*, 2021 WL 4311140, at *2 (finding that COVID-19 was an extraordinary circumstance but dismissing the claim for equitable tolling on diligence grounds because the prisoner "says literally nothing about any actions he undertook or attempted in order to advance his petition in the period he seeks to have tolled."); *Cottell*, 2023 WL 3852384, at *4 (finding that prisoner's equitable tolling claim fails because the prisoner does not "proffer anything regarding his efforts to contend with the extraordinary circumstances[]" brought on by COVID-19).

Here, like the prisoners in *Maris* and *Cottell*, petitioner offers nothing beyond conclusory allegations to show he diligently pursued his rights during his time in quarantine. Petitioner does not even provide when and for how long he was quarantined. Further, the Court finds no evidence in the record that petitioner worked on filing the instant petition during the AEDPA limitations period. Accordingly, the Court finds that petitioner failed to diligently pursue his claim during COVID-19, and, therefore, is not entitled to equitable tolling.

All five of petitioner's arguments for equitable tolling fail to prove either extraordinary circumstances or petitioner's diligent pursuit of his rights. As such, the Court refuses to invoke the "rare and exceptional" device of equitable tolling and the petition is dismissed as untimely.

## V. CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety;

**ORDERED** that the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'") (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(d); 2d Cir. R. 22.1.

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  April 10, 2024
        Albany, New York

Mae A. D'Agostino
U.S. District Judge